UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMGUARD INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-2139 |
| | § | |
| LONE STAR LEGAL AID, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Several motions are pending before the court: plaintiff AmGuard Insurance Company's ("AmGuard") motion for summary judgment (Dkt. 45) against defendants Lone Star Legal Aid ("Lone Star"), BXS Insurance, Inc. ("BXS"), and intervenor AIG Specialty Insurance Company ("AIG") (collectively, "Defendants"); Defendants' motion for partial summary judgment against AmGuard (Dkt. 51); cross motions to exclude expert witness testimony (Dkts. 53, 54); and Defendants' objections to AmGuard's summary judgment evidence (Dkt. 62). The deadlines for responses and replies have elapsed, and the motions are now ripe for consideration. Having considered the motions, responses, replies, record evidence, and applicable law, the court is of the opinion that AmGuard's motion (Dkt. 45) should be GRANTED in part, and DENIED in part; Defendants' motion for partial summary judgment (Dkt. 51) should be DENIED; the motions to exclude (Dkts. 53, 54) should be DENIED; and Defendants' objections (Dkt. 62) should be SUSTAINED in part.

### I. BACKGROUND

This case involves an insurance coverage dispute between AmGuard and Lone Star. Lone Star, through its insurance broker and co-defendant BXS, obtained an insurance policy from

AmGuard covering Lone Star's principal office building ("Building") located at 1415 Fannin Street in Houston, Texas and other Lone Star properties for the period between June 10, 2017 and June 10, 2018 ("Policy"). Dkt. 45 at 7. The Policy included a Protective Safeguards Endorsement ("PSE") that added certain conditions precedent and exclusions. *Id.* Among other things, the PSE specifically required Lone Star to maintain an automatic sprinkler system in the Building. *Id.*; Dkt. 45-1 at 112.

On August 28, 2017, the Building was damaged when flooding from Hurricane Harvey caused an explosion in an electric utility vault that resulted in a fire inside the Building. Dkt. 45 at 7. Because the Building did not have an automatic sprinkler system prior to the fire, AmGuard denied Lone Star's loss claim. *Id.* at 7.

AmGuard filed this suit against Lone Star and BXS seeking a declaration of the rights and obligations of the parties under the Policy. Dkt. 1. Lone Star and BXS each answered and filed counterclaims against AmGuard seeking declaratory relief, and asserting contractual, extra-contractual, and statutory claims. Dkt. 26, 28. AIG intervened after purchasing portions of Lone Star's claims against AmGuard. Dkt. 29.

AmGuard now moves for summary judgment on all claims because, AmGuard argues, whether coverage for the claimed damage exists is a dispositive issue that may be determined as a matter of law on the Policy's express language. Dkt. 45. Defendants respond that summary judgment on their breach of contract claim is in order because the lack of an automatic sprinkler system did not contribute to the fire damage and the Texas Insurance Code precludes AmGuard from denying coverage due to a breach of a fire insurance policy that did not contribute to the claimed damage. Dkt. 51.

2

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 436 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2540 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

AmGuard asserts that no genuine issue of material fact exists and judgment as a matter of law in its favor is appropriate because the plain language of the contract is unambiguous and disposes of all claims. Dkt. 45. In response, Defendants argue that the plain, unambiguous language of the contract supports judgment in its favor, or alternatively, a provision of the Texas Insurance Code (known as the Anti-Technicality Statute) precludes AmGuard from denying coverage in this case unless Lone Star's breach of the insurance contract contributed to the claimed damage. Dkt. 51. Defendants also submitted evidence to support their claim that Lone Star's breach did not contribute to the claimed damage. *Id.* AmGuard denies the Anti-Technicality Statute applies in this case, but also submits evidence to show that the claimed damage would have been less but for Lone Star's breach. Dkt. 56. Both sides have objected to the summary judgment evidence offered by the other. Dkts. 53, 54, 62. The court will consider each of these arguments in turn.

A. Plain Language of the Policy

The parties do not dispute that Texas law controls the interpretation of the Policy. Under Texas Law, insurance policies are interpreted "under the well-established rules of contract construction." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). "The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Id.* at 893. "[E]very contract should be interpreted as a whole and in accordance with the plain meaning of its terms," and "no provision is rendered meaningless." *Id.* at 892-93. Terms are assigned "their ordinary and generally accepted meaning unless the contract directs otherwise." *Id.* at 893. "Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy; however, the provisions found in the main policy and endorsement should be construed together unless doing so would negate or render superfluous the additional coverage afforded in the endorsement." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115 (5th Cir. 2010) (internal quotations omitted).

"If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Id.* Ambiguities arise "only when the contract is actually susceptible to two or more reasonable interpretations." *Id.* (Internal quotations omitted). "The fact that the parties disagree about the policy's meaning does not create an ambiguity." *Id.*

The burden of establishing coverage under the terms of the policy lies with the insured and shifts to the insurer to plead and prove the policy excludes coverage. *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015); *see also* TEX. INS. CODE § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense.").

The parties agree that the Policy would cover the claimed loss but for the PSE's requirement that Lone Star maintain an automatic sprinkler system.[1] Dkt. 45 at 7; 51 at 6-9. Specifically, the PSE alters the Policy to require Lone Star to "maintain the protective devices or services listed in the Schedule," and excludes "loss or damages caused by or resulting from fire if, prior to the fire, [Lone Star] . . . [f]ailed to maintain any protective safeguard listed in the Schedule." Dkt. 45-1 at 112. The PSE schedule identified the Building as a covered property and an automatic sprinkler system as a required protective safeguard for the Building. *Id.* at 111-12. Notwithstanding the unambiguous language of the PSE, Defendants assert the Policy still covers the claimed damage under a separate provision—the water exclusion provision. Dkt. 51 at 21-24.

However, the language and structure of the Policy subvert Defendants' argument. The Policy's first section is titled "Section I – PROPERTY." Dkt. 45-1 at 33. Section I is further divided into several subsections, including "A. Coverage" and "B. Exclusions." Dkt. 45-1 at 33, 46. As the titles suggest, subsection A details the types of damage the Policy will pay for, whereas subsection B lists specific instances where damage that might otherwise be covered under subsection A is not included within the Policy's protections. In other words, the Policy obligates AmGuard to cover any claimed damage listed in subsection A unless a specific provision in subsection B excludes such damage from coverage.

The water exclusion provision is located within subsection B and reads as follows:

> B. Exclusions
> 1. We will not pay for loss or damage caused directly or indirectly by
> . . .

---

[1] Defendants contest the enforceability of the PSE. The court considers this argument below.

> g. Water
> (1) Flood . . .
> But if any of the above, in Paragraphs (1) through (5), results
> in fire, explosion or sprinkler leakage, we will pay for the loss or
> damage caused by that fire, explosion or sprinkler leakage.

*Id.* at 46, 48. According to Defendants, the final sentence in the water exclusion provision provides coverage for any fire resulting from flooding in a covered property. But this is counter to the provision's unambiguous language. The water exclusion provision specifically excludes damage caused by flooding, and then carves out "damage caused by . . . fire, explosion or sprinkler leakage" from that exclusion. In doing so, the Policy does not provide an independent basis for coverage, but instead retains coverage for such damage within the coverage in subsection A. However, that coverage is still subject to other exclusions, including the PSE which amends subsection B to specifically exclude "loss or damage caused by or resulting from fire if, prior to the fire," Lone Star did not maintain an automatic sprinkler system in the Building. *Id.* at 111-12.

Defendants cite *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58 (Tex. App.—Houston [1st Dist.] 1997, pet. denied), in support for their argument that the PSE's general exclusionary language does not apply to the alleged specific grant of coverage in the water exclusion provision. Dkt. 51 at 22-23. In *Marchetti*, an insured sought coverage of damage to their home from the backup of water and raw sewage through a drain opening in their utility room caused by local flooding. 962 S.W.2d at 59. The insurance policy at issue was structured similarly to the Policy in this case insofar as it listed certain types of damage that were covered in one section subject to certain exclusions from damage in another. *Id.* at 60.

One type of damage listed in the coverage section was "Accidental Discharge, Leakage or Overflow of Water or a Steam from within a plumbing, heating or air conditioning system or household appliance." *Id.* The policy also included an exclusion for "loss caused by or resulting

6

from flood[ing]." *Id.* The *Marchetti* court held that "even though the invasion may have been proximately caused by flood water, the exclusion does not apply," and affirmed the lower court's judgment finding in favor of coverage because "the policy unambiguously provides coverage for water damage that resulted from an accidental discharge from within [the insured's] plumbing system caused by the pressure of backed-up water and sewage." *Id.* at 61.

As discussed above, the water exclusion provision is not a specific grant of coverage, but an exclusion of flooding damage that carves out coverage for any resulting fire damage. Therefore, *Marchetti* is inapposite. Accordingly reading all parts of the Policy and PSE as a whole, the Policy unambiguously excludes from coverage the claimed damage to the Building.

B. <u>Anti-Technicality Statute</u>

Typically, the court's analysis would end with the unambiguous language of an insurance policy. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d at 893 ("If the [policy] language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law."). However, "[i]f the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *JAW The Pointe*, 460 S.W.3d at 603. Here, Defendants argue that Section 862.054 of the Texas Insurance Code (commonly referred to as the Anti-Technicality Statute) ("§ 862.054") renders the PSE unenforceable under these circumstances. Dkt. 51 at 11-16.

1. *Breach or No Breach*

Section 862.054 of the Texas Insurance Code provides:

**Fire Insurance: Breach by Insured; Personal Property Coverage.**

Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire

7

    insurance policy or contract of insurance on personal property, or of an application for the policy or contract:

    (1) does not render the policy or contract void; and

    (2) is not a defense to a suit for loss.

TEX. INS. CODE § 862.054. First enacted in 1913, the statute applies "only to those warranties and provisions in policies the breach of which might contribute to or bring about a fire loss." *Phila. Underwriters' Agency Ins. Ass'n v. Driggers*, 238 S.W. 633 (Tex. 1922). Section 862.054 "does not reach insurance policy provisions that are themselves material but, if breached, from their very nature could not contribute to the destruction of the insured property." *RLI Ins. Co. v. Costello*, 230 F. Supp. 3d 737, 745 (S.D. Tex. 2017) (Atlas, J.) (quotation omitted) (citing *Albany Ins. v. Anh Thi Kieu*, 927 F.2d 882, 892-93 (5th Cir. 1991). Section 862.054 applies when "the provision in question was one in which the breach might have contributed to bring about a loss by fire, but which did not." *Farmers Ins. Exchange v. Greene*, 376 S.W.3d 278, 284 (Tex. App.—Dallas 2012) *aff'd*, 446 S.W.3d 761 (Tex. 2014).

    Defendants argue that § 862.054 precludes AmGuard from denying coverage based on the absence of an automatic sprinkler system in the Building without providing evidence that Lone Star's breach contributed to the claimed damage. Dkt. 51 at 11-16. AmGuard insists that § 862.054 does not apply, because the PSE creates a condition to coverage and Lone Star's failure to comply with this condition is not a "breach" under § 862.054. Dkt. 56 at 10. In support of its position, AmGuard cites several recent cases.

    In *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761 (Tex. 2014), the Texas Supreme Court held that § 862.054 "does not include a homeowner's actions in vacating her premises and 'triggering' the vacancy clause," within their homeowner's insurance policy. *Id.* at 767. The *Greene*

8

policy suspended coverage after 60 days "[i]f the insured move[d] from the dwelling and a substantial part of the personal property [was] removed from that dwelling." *Id.* at 763. The *Greene* court concluded that this clause could not be breached because it did not contain a promise or guarantee to occupy the dwelling. *Id.* at 765.

Similarly, this court determined that § 862.054 did not apply to an insurance provision excluding coverage if the insured vehicle "lacks a valid registration at the time of loss," because the exclusion "did not contain any promises by, duty of, or obligation of, the insured." *RLI Ins. Co.*, 230 F. Supp. 3d at 744-45.

In this case, the PSE required Lone Star "to maintain" an automatic sprinkler system in the Building. Dkt. 45-1 at 112. Therefore, the Policy unambiguously includes an obligation of Lone Star's, and the court concludes that § 862.054 applies to the Policy. AmGuard cannot rely on Lone Star's failure to maintain an automatic sprinkler system in the Building as a defense against Defendants' claims unless AmGuard can show the lack of an automatic sprinkler system contributed to the claimed damage.

2. *Scope of § 862.054*

Before turning to the summary judgment evidence on this issue, the court must first determine if § 862.054 applies to all of Defendants' claimed damage, or if only claims for personal property are within § 862.054's scope. Neither the Texas Supreme Court nor the Fifth Circuit has ruled definitely on this specific issue. This court therefore must make an "*Erie* guess" as to how the Texas Supreme Court would decide the issue. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000); *United States v. Johnson*, 160 F.3d 1061, 1063 (5th Cir. 1998).

9

> The Dallas appeals court succinctly explained the history of § 862.054:
>
> The 1913 version of the statute was eventually codified as article 6.14 of the insurance code. The purpose of the statute did not change, and continued to be described as an effort to prevent insurance companies from avoiding liability under technical provisions of their policies. . . .
>
> When the Legislature recodified section 6.14 to section 862.054, it did so without substantive change. . . [T]he bill analysis of the current statute and the corresponding House Committee report state the substance of the law has not been altered. The sole purpose of these provisions is to compile the relevant law, arrange it in a logical fashion, and rewrite it without altering its meaning or legal effect.

*Farmers Ins. Exch.*, 376 S.W.3d at 284 (citations and quotations omitted). The court further concluded that "no Texas court has ever applied the current statute to real property." *Id.* Historically, Texas courts consistently determined that the Anti-Technicality Statute applied only to personal property. *See, e.g.*, *Greene*, 446 S.W.3d at 774 (Boyd, J., concurring) (observing that Anti-Technicality Statute applied to fire insurance policy covering personal property); *Texas Farm Bureau Mut. Ins. Co. v. Carnes*, 416 S.W.2d 863, 865 (Tex. Civ. App.—Corpus Christi 1967, writ ref'd n.r.e.) (explaining that the Anti-Technicality Statute "was passed to prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy."); *Millers Mut. Fire Ins. Co. v. Jackson*, 359 S.W.2d 510, 511-12 (Tex. Civ. App—Amarillo 1962, writ ref'd n.r.e.) (considering whether the damaged property was real or personal property because "the jury found none of [the insured's breaches] contributed to bring about the damages."); *Commercial Cas. Ins. Co. v. Holmes*, 206 S.W.2d 882, 884 (Tex. Civ. App.—Austin 1947, writ ref'd n.r.e.) (noting Anti-Technicality Statute applies to "any fire insurance policy upon personal property"); *Aetna Ins. Co. v. Lewis*, 204 S.W. 1170, 1171 (Tex. Civ. App.—Austin 1918, writ ref'd) (holding that Anti-Technicality Statute did not apply to real property).

The court is of the opinion that § 862.054 does not apply to real property. The 2001 codification expressly disclaimed any change to the substance of the law. *AIG Aviation, Inc. v. Holt*, 198 S.W.3d 276, 281 (Tex. App.—San Antonio 2006, pet. denied) (citing HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 2811 77th Leg., R.S. (2001)). Prior to 2001, the weight of authority agreed that § 862.054 applied only to fire insurance on personal property.

Therefore with regard to Defendants' real property claims, AmGuard may assert Lone Star's breach as a defense to coverage. Because the PSE required Lone Star to maintain an automatic sprinkler system in the Building and it is undisputed that the Building did not have an automatic sprinkler system, the court finds that AmGuard has met its burden and is entitled to judgment as a matter of law on Defendants' real property claims.

In sum, Lone Star breached the Policy by failing to maintain an automatic sprinkler system in the Building. AmGuard asserts Lone Star's breach as a defense to coverage of the claimed damage. However, § 862.054 precludes AmGuard from asserting that defense as to Defendants' personal property claims unless AmGuard can show Lone Star's breach contributed to the loss. The court will now consider the evidence submitted on summary judgment.

C. Motions to Exclude [2]

AmGuard and Defendants each submitted evidence to support their position on whether Lone Star's breach contributed to the claimed loss. Each also submitted motions to exclude testimony of the other's witnesses. Dkts. 53, 54, 62. Before weighing the evidence presented, the court must determine its admissibility. Fed. R. Evid. 104.

---

[2] In addition to the experts discussed below, AmGuard seeks to exclude one opinion of Defendants' witness L. Eddie Kizer. Dkt. 54 at 18-19. The court refrains from ruling on AmGuard's objection at this time because Kizer's contested opinion has no bearing on the court's decision.

The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In evaluating an expert's testimony under Rule 702, the court takes on a "gatekeeping role" and makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597, 113 S. Ct. 2786 (1993). To admit an expert's testimony, the court must determine that it is both relevant and reliable. *Id.* at 589.

To establish reliability, the party offering the expert testimony need not show that the expert's assessment is correct. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). However, the court need not admit testimony based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997). In making the reliability determination, the Supreme Court has indicated that the trial court should consider whether the expert's theory or technique (1) can or has been tested, (2) is subject to peer review and publication, (3) has a high known or potential error rate or standards controlling its operation, and (4) is generally accepted in the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct.

1167 (1999) (citing *Daubert*, 509 U.S. at 592–94). Importantly, these factors are not a definitive checklist and may not be relevant to assessing the expert's reliability in every case. *Id.* at 150.

Although the court's gatekeeping obligation applies to both scientific and non-scientific expert testimony, the factors listed in *Daubert* are more difficult to apply to non-scientific experts. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (noting that some of the pronouncements in *Daubert* had limited application in the context of non-scientific testimony). Therefore, the court's gatekeeping inquiry will vary depending on the nature of the case before the court, the expert's particular expertise, and the subject of his/her testimony. *Kumho Tire Co.*, 526 U.S. at 150. Nonetheless, the court will apply the same level of scrutiny to scientific and non-scientific expert testimony. *See* Fed. R. Evid. 702, Advisory Comm. Note (2000) ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). "[T]he court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

1. *Testimony of Sina Maria Alvarado*

Defendants challenge the expert testimony of AmGuard's witness Sina Maria Alvarado

because Alvarado is neither qualified to provide an expert opinion nor are her opinions sufficiently reliable. Dkt. 53, 62. Alvarado is an insurance adjuster with 22 years of experience handling fire loss claims. Dkt. 58-1, Alvarado Dep. at 24:10-12, 71:22-24. These claims include buildings both with and without fire sprinkler systems. *Id.* Defendants assert that, despite her experience, Alvarado does not sufficiently explain the connection between her experience and her conclusions, and cannot do so because her experience does not include fires like the one that occurred in the Building. The court is satisfied that Alvarado's experience is sufficient for her to form an opinion regarding the effectiveness of fire sprinkler systems. Defendants' objections are better left for cross examination, not a basis for exclusion. *See Daubert*, 509 U.S. at 596. Therefore, Alvarado's expert testimony is deemed admissible.

2. *Testimony of Joseph Ellington*

Defendants also object to any expert opinions of Joseph Ellington because AmGuard withdrew Ellington as a designated expert witness and did not produce an expert report containing Ellington's opinions. Dkt. 62. In September 2017, Ellington inspected the Building along with Lone Star's representatives. Dkt. 66 at 6. Because AmGuard determined it would deny Lone Star's claim, it instructed Ellington to close his investigation file and not proceed with producing a written report. *Id.* AmGuard subsequently withdrew Ellington from its list of expert witnesses. *Id.* at 4.

In determining whether to admit untimely expert opinions, the court considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) the potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such a prejudice." *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

AmGuard chose to remove Ellington from their expert witness list and failed to provide a report. AmGuard must live with the consequences. The testimony Ellington might provide

regarding sprinkler systems is important, but AmGuard has another expert capable of testifying to this point. Defendants had no opportunity to depose Ellington or examine his opinions. Allowing Ellington to opine now would prejudice Defendants far more than it would benefit AmGuard. The court agrees with both parties that a continuance at this late stage of litigation is not warranted under these circumstances. Dkt. 62 at 9-10; 66 at 9-10.

Having considered the applicable law, the court is of the opinion that Ellington may testify as a lay witness, including his personal knowledge of the September 2017 inspection. However, Ellington may not present expert opinions about the cause of the claimed loss or effect of the absent sprinkler system.

### 3. *Testimony of David Cook*

AmGuard challenges the testimony of David Cook on several grounds. First it argues that Defendants did not sufficiently disclose Cook's opinions regarding sprinkler systems prior to his deposition. Dkt 54 at 9-10. Defendants did designate Cook as an expert on "the effect an automatic sprinkler system would have had on the spread of the fire and resulting damage," but did not include these opinions in his expert report. Dkt. 59 at 9-11. Nonetheless, Cook opined on this topic during his deposition, and AmGuard questioned him about the same. Dkt. 54 at 10; 59 at 10-11. And unlike AmGuard's designation of Ellington, at no time did Defendants withdraw Cook as an expert. Allowing Cook to testify about an important issue in this litigation, that he was designated to opine on, outweighs any potential prejudice to AmGuard considering Defendants' other expert related similar opinions in his report.

AmGuard also takes exception to Defendants' experts' qualifications and the reliability of their opinions. The court is not convinced. Cook is qualified as an expert by virtue of his experience and training as fire investigator and his investigation of the Building. Dkt. 59 at 8. AmGuard's

15

objections are best reserved for trial, where "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

      4. *Testimony of Christopher Kachura*

AmGuard urges very similar arguments for the exclusion of Defendants' witness Christopher Kachura. According to AmGuard, Kachura, like all of Defendants' expert witnesses, provides unreliable opinions that this court should exclude. However, this court again is unpersuaded by AmGuard's arguments. Kachura is a professional engineer specializing in fire protection systems and has been involved with the design of several hundred automatic sprinkler systems for commercial buildings. Dkt. 59 at 12. He based his opinions on the effects of a hypothetical sprinkler system that would meet certain standards of the National Fire Protection Association ("NFPA"), a trade group that establishes codes and standards for fire protection. Kachura also is a member of the NFPA and sits on one of its technical committees that evaluates and writes new codes.

AmGuard challenges these bases and Kachura's lack of first-hand knowledge regarding certain aspects of the Building fire. But, the basis of Kachura's opinions affect the weight given to his testimony, which a jury must determine. *See Puga*, 922 F.3d at 294. The court is satisfied that Kachura's methodology is reliable and admissible under Rule 702.

D. <u>Summary Judgment Evidence</u>

Having determined the appropriate legal framework and threshold evidentiary issues, the court will now weigh the summary judgment evidence submitted. Remaining to be considered is whether Lone Star's failure to maintain an automatic sprinkler system contributed to the claimed

loss. A deep analysis of the parties' voluminous record is not necessary because a genuine issue or material fact plainly exists.

AmGuard's expert testified that "sprinkler systems activate and either lessen the fire or completely put out the fire." Dkt. 56-2, Alvarado Dep. 72:12-13. This view is supported by a 2017 NFPA study that demonstrates sprinkler systems are effective at controlling upwards of 95% of fires and on average reduce fire loss in office buildings by 50%. Dkt. 56 at 17. Defendants' own witness admits "sprinkler systems provide some assistance" in containing fire. Dkt. 56-2, Kizer Dep. 23:13-19.

Defendants' expert Cook denies that an automatic sprinkler system would have had a "measurable effect" on the damage to the Building. Dkt. 51 at 18. Cook explains that the fire began when a transformer in an underground vault exploded dispersing oil through the ventilation system and into the Building. *Id.* at 17. Cook opines that "a large fireball" consumed the oil throughout the ventilation system and Building creating conditions an automatic sprinkler system could not cope with. *Id.* at 17-18. Kachura confirmed that the fire "would have required a different level of suppression that would have been outside the scope of the automatic sprinkler system that would have been installed" in the Building. *Id.* at 19.

Central to Cook and Kachura's opinion that the lack of sprinkler system did not contribute to the claimed damage is the presence of oil from the transformer that acted as an accelerlant and boosted the inferno. *Id.* at 17-19. However, Ellington noted that his inspection showed no indication of combustible or flammable liquids in the room. Dkt. 56-3, Ellington Rep. at 6.

Taken together, the court concludes that a reasonable jury could differ on whether the absence of an automatic sprinkler system contributed to the claimed loss. Accordingly, summary

judgment must be denied as to Defendants' breach of contract claim on the personal property damage.

## IV. CONCLUSION

Because Lone Star's failure to maintain an automatic sprinkler system in the Building breached the Policy, AmGuard's motion for summary judgment (Dkt. 45) is GRANTED as to the Defendants' real property damage.

Because the Anti-Technicality statute precludes AmGuard from denying coverage of Defendants' personal property claims on the basis of Lone Star's breach of the Policy without proving the breach contributed to the loss, AmGuard's motion for summary judgment is DENIED as to Defendants' personal property damage.

Because a reasonable jury could differ as to whether Lone Star's breach contributed to the claimed personal property damage based on the evidence presented, Defendants' motion for partial summary judgment (Dkt. 51) is DENIED.

For the reasons discussed above, Defendants' motion to exclude (Dkt. 53) and AmGuard's motion to exclude (Dkt. 54) are DENIED, and Defendants' objections to improper summary judgment evidence is SUSTAINED in part and OVERRULED in part.

The parties are further ORDERED to:

(1) meet and confer regarding all remaining issues in this case;

(2) discuss with their clients and each other whether alternative dispute resolution is appropriate and shall advise the court of the results of their discussion..

Signed at Houston, Texas on January 6, 2020.

_____
Gray H. Miller
Senior United States District Judge